United States Bankruptcy Court
District of Massachusetts
Western Division

|   |   |
|---|---|
| In re:<br><br>WAYNE G. THOMPSON,<br>a/k/a WAYNE'S EXCAVATING AND CONCRETE,<br>a/k/a AFFORDABLE EXCAVATION,<br><br>Debtor | Chapter 7<br>Case No.07-41294-HJB |

**MEMORANDUM OF DECISION**

Before this Court are two motions brought by Chapter 7 debtor Wayne G. Thompson (the "Debtor") pursuant to 11 U.S.C. § 522(f)[1] (the "Motions to Avoid" or "Motions to Avoid Liens"). In each, the Debtor seeks to avoid judicial liens which attach to his interest in real property (the "Property") claimed as exempt under the Massachusetts Homestead Statute, Mass. Gen. Laws ("M.G.L.") ch. 188, §§ 1, et seq. (the "Massachusetts Homestead Statute" or "Homestead Statute"). The objecting parties request this Court to find and rule that the protection of the Homestead Statute was terminated by the Debtor's purported "abandonment" of his homesteaded property. The Motions to Avoid will each be granted, but for reasons other than a resolution of the abandonment question.

---

[1] References to statutory provisions throughout this memorandum will be hereinafter be to the United States Bankruptcy Code (the "Bankruptcy Code" or the "Code"), 11 U.S.C. §§ 101, et seq., unless otherwise noted.

1

I.   FACTS AND TRAVEL OF THE CASE

Although the parties have identified a number of factual disputes, the facts relevant to the disposition of this contested matter are straightforward and essentially undisputed. In the event of any material dispute, the following constitute the Court's findings of fact under Federal Rule of Bankruptcy Procedure (the "Rules") 7052.

The Debtor and his then-wife (the "Former Spouse") acquired the Property in 1988, at a time when they were married and occupied the Property as their primary residence with their two children. Such was the situation in October of 1998, when the Debtor claimed a homestead exemption on the Property under § 1 of the Homestead Statute by recording a declaration of homestead pursuant to § 2 of the Homestead Statute (the "Homestead Declaration"). See M.G.L. ch. 188, §§ 1, 2. In May of 2004, however, the Former Spouse filed a complaint for divorce, and a Judgment of Divorce issued on January 4, 2006. In the Judgment of Divorce, the Debtor was ordered to assign all of his rights and interest in the Property to the Former Spouse. By the petition date, April 11, 2007, he no longer lived at the Property, although the Former Spouse and the Debtor's daughter (the "Daughter"), a college student, still resided there.

At trial, the Debtor testified that he plans to someday return to the Property and occupy it as his primary residence, notwithstanding the entry of the Judgment of Divorce and its mandate requiring the transfer of the Property. The Debtor hopes for a reconciliation with his Former Spouse, and says he has lived in and visited the Property subsequent to

the divorce.[2] The Debtor further testified that many of his personal effects remain on the Property and that he continued to contribute to real estate taxes, mortgage payments, utilities and other expenses related to the Property through at least the fall of 2006.

Irrespective of the Debtor's intentions, it is clear that at the time the petition was filed, he no longer resided at the Property. Although the Debtor listed the Property as his address on the bankruptcy petition, he acknowledged that he had been renting an apartment for some time, which apartment address also appeared on his driver's license.

On April 11, 2007, the Debtor commenced the present bankruptcy case by filing a petition for relief under Chapter 7 of the Bankruptcy Code. On his Schedule A filed in connection with the case, the Debtor alleged a joint ownership interest in the Property and valued his half interest in the property at $125,000. On Schedule D, the Debtor listed three secured interests in the Property: (1) a mortgage, obtained jointly with the Former Spouse prior to the divorce, in favor of MSC Mortgage Service, Inc., with a balance of approximately $52,000; (2) an execution on a judgment in favor of Karl's Excavating, Inc. in the amount of $11,811.59; and (3) an execution on a judgment in favor of the Bank of Western Massachusetts in the amount of $34,038.39. On Schedule C, the Debtor claimed all unencumbered equity in the Property exempt under the Massachusetts Homestead Statute.

At the meeting of creditors held pursuant to § 341 of the Code, the Debtor apparently testified to having signed a deed transferring his interest in the Property to the Former Spouse. Subsequently, however, he recanted that testimony, explaining that he

---

[2] Testimony of the Former Spouse was not offered by any party.

had been distracted and confused during the § 341 meeting because he had been in a great deal of pain as a result of an injury for which he was undergoing continuing medical treatment. No such deed has been recorded and none has been produced.[3]

On May 8, 2007, the day following the § 341 meeting, the Debtor filed the Motions to Avoid Liens. The Bank of Western Massachusetts and Karl's Excavating, Inc. (the "Lienholders") objected to the Motions to Avoid within the time allowed for objecting to the Debtor's exemptions (the "Objections").[4]

II.    POSITIONS OF THE PARTIES

The Lienholders contend that the Debtor's claimed exemption in the Property under the Homestead Statute (the "Homestead Exemption"), although validly obtained, has lapsed, because he subsequently "abandoned" the Property. Relying on In re Marrama, 307 B.R. 332 (Bankr. D. Mass. 2004), the Lienholders urge this Court to recognize abandonment as a viable method by which an estate of homestead may be terminated

---

[3] The objections to the Motions to Avoid Liens, filed by Karl's Excavating, Inc. and the Bank of Western Massachusetts (the "Lienholders"), were initially premised on the contention that the Debtor's transfer of the deed terminated his Homestead Exemption. See In re Hildebrandt, 313 B.R. 535 (Bankr. D. Mass. 2004). The Lienholders appear to have since abandoned that argument. However, to the extent the Lienholders continue to rely upon that contention, the Court finds it unavailing. There is no tangible evidence that the deed exists.

[4] Absent a motion for an extension of time filed prior to the expiration of the deadline, the deadline for parties in interest to file an objection to a debtor's claimed exemptions is thirty days from the conclusion of § 341 meeting of creditors or thirty days after an amendment or supplemental schedule is filed. Fed. R. Bankr. P. 4003(b). Although the Debtor claimed that the objections to the exemptions were untimely, the Objections to the Motions to Avoid Liens were filed prior to the 30-day deadline established by Rule 4003(b). As the Objections clearly questioned the validity of the Debtor's claimed Homestead Exemption, they constitute timely-filed objections to that exemption. See, In re Betz, 273 B.R. 313, 320 (Bankr. D. Mass. 2002) (". . . in the instance where some form of written objection was manifested within the 30 day deadline, Rule 4003(b) is satisfied even though no formal objection was filed.").

under Massachusetts law. The charge of abandonment is premised on the Debtor's failure to occupy the Property on the petition date and the Lienholders' contention that the Debtor has failed to present evidence to support a reasonable expectation that he will someday return to the Property. In response to a query from the Court regarding the impact of the Daughter's continued residence at the property, the Lienholders were noticeably vague, claiming that there is no evidence to suggest she is not emancipated and that "it would be a different case" if the Daughter were a minor.

The Debtor, in contrast, argues that termination of an estate of homestead under Massachusetts law can only be effected in writing and not by abandonment. Moreover, even if abandonment of a homesteaded property could terminate an otherwise valid Homestead Exemption, the Debtor maintains that he has not abandoned the Property, as he has always intended to reconcile with his wife, return to the Property and live there as his primary residence. Finally, according to the Debtor, the Daughter's continued residence at the Property maintains the protection afforded by the Debtor's Homestead Exemption, since she is a member of his "family" within the meaning of the Homestead Statute.

III.   DISCUSSION

    A.   **The Statutory Framework**

Upon the filing of a bankruptcy case, "all legal or equitable interests of the debtor in property," with certain limited exceptions, become property of the bankruptcy estate, 11 U.S.C. § 541(a)(1), potentially available for distribution to creditors, see, e.g., 11 U.S.C. §§ 704(a)(1); 727. Section 522(b), however, allows a debtor to exempt certain property from the estate. 11 U.S.C. § 541(b), (c). In Massachusetts, a debtor may elect exemptions

5

provided for under the Bankruptcy Code or may choose to claim exemptions provided for under nonbankruptcy federal, state and local law. 11 U.S.C. § 522(b), (d); In re Leigh, 307 B.R. 324, 325 n.1 (Bankr. D. Mass. 2004). In the present case, the Debtor has elected to claim the exemptions afforded by the state under nonbankruptcy law, including, *inter alia*, his claimed exemption in the Property pursuant to the Massachusetts Homestead Statute.

In the absence of a timely objection to a debtor's claimed exemptions, the claimed property is exempt pursuant to § 522(l). If, as here, a timely objection is made to an exemption arising under state law, the Court must look to the law of that state to determine the exemption's validity. In re Garran (Garran v. SMS Fin. V, LLC), 338 F.3d 1, 6 (1st Cir. 2003); In re Miller, 113 B.R. 98, 101 (Bankr. D. Mass. 1990). The party objecting to the claimed exemption "bears the burden of proving that the exemptions are not properly claimed," Fed. R. Bankr. P. 4003(c), whether the objection is raised in opposition to a lien avoidance motion or is brought independently. See Fed. R. Bankr. P. 4003(d) (governing motions to avoid liens); Fed. R. Bankr. P. 4003(c) (objecting party bears burden of proof regarding validity of exemptions in *any* hearing under Rule 4003).

Secured claims, including claims secured by judicial liens, are "not routinely discharged at the conclusion of the bankruptcy case. However, . . . such liens may be avoidable under a separate provision of the Bankruptcy Code, § 522(f)." Garran, 338 F.3d at 5. Pursuant to § 522(f), a judicial lien may be avoided to the "extent that such lien impairs an exemption to which the debtor would have been entitled under [§ 522(b)]." A judicial lien is said to impair an exemption when, after deducting the amount of other secured claims on the property, see, e.g., In re Ballirano, 233 B.R. 11, 14 (Bankr. D. Mass.

1999), and the amount of exemption claimed by the debtor, there is no equity left to satisfy the judicial lien.[5]

Here, the Property is valued at $250,000. After deducting the amount of the mortgage, approximately $198,000 in equity remains in the Property. If the Debtor has a valid claim to a Homestead Exemption of $500,000, see M.G.L. ch. 188, § 1, then there is no remaining equity to which the judicial lien may attach, and the liens are therefore avoidable in their entirety. *If*, however, the Homestead Exemption on the Property has lost its vitality, the Debtor's share of the equity – approximately $99,000 – will inure to the benefit of the Lienholders, and the liens are not avoidable. The outcome of the Motions to Avoid, therefore, is entirely dependent upon the validity of the Debtor's claimed Homestead Exemption, to which the Court will now turn.

### B. The Homestead Exemption

Section 1 of the Massachusetts Homestead Statute provides that

---

[5] The "formula" used to determine whether a judicial lien impairs an exemption is set forth in § 522(f)(2)(A):

> a lien shall be considered to impair an exemption to the extent that the sum of –
> (i) the lien;
> (ii) all other liens on the property; and
> (iii) the amount of the exemption that the debtor could claim if there were no liens on the property;
> exceeds the value that the debtor's interest in the property would have in the absence of any liens.

11 U.S.C. § 522(f)(2)(A). Put another way, a "debtor can avoid a particular judicial lien if, in order to satisfy it, he would have to use assets he is otherwise entitled to set aside from the bankruptcy estate as exemptions." Garran, 338 F.3d at 5. And, if the value of the property is such that non-exempt equity exists to satisfy a portion of the judicial lien, "a debtor is permitted to avoid only that portion of the judicial lien that infringes upon the exemption to which he is entitled." Id. (citing E. Cambridge Savs. Bank v. Silveira (In re Silveira), 141 F.3d 34, 35-36 (1st Cir. 1998)).

7

> an estate of homestead to the extent of $500,000 in the land and buildings may be acquired . . . by an owner or owners of a home . . . . Said estate shall be exempt from the laws of conveyance, descent, devise, attachment, levy on execution and sale for payment of debts or legacies except [in certain enumerated cases]. . . . [P]rovided, that only one owner may acquire an estate of homestead in any such home for the benefit of his family; and provided further, that an estate of homestead may be acquired on only one principal residence for the benefit of a family. . . ."

M.G.L. ch. 188, § 1.

In order to acquire an estate of homestead under Massachusetts law, an owner of a home must: (1) occupy or intend to occupy the home as a primary residence, M.G.L. ch. 188, § 1, and (2) evidence the intent to hold the property as a homestead by a writing – either a designation in the deed at conveyance to the owner or by recording a Homestead Declaration in the appropriate registry of deeds,  M.G.L. ch. 188, § 2.[6]  Here, there is no question that the Debtor validly *acquired* an estate of homestead in the Property under Massachusetts law.  As co-owner of the property, he filed an appropriate Homestead Declaration with the registry of deeds at a time when he occupied the property.

Once acquired, the Homestead Exemption protects not only the declarant, but also the declarant's family.  This protection is a central purpose of the Massachusetts Homestead Statute, and "one may view the homestead estate as protecting not the declarant's legal interest in the home or the home itself but rather the economic interest in the home of the declarant and his family."  In re Vasques, 337 B.R. 255, 257 (Bankr. D.

---

[6] Section 2 of the Homestead Statute provides, in relevant part:

> To acquire an estate of homestead in real property, the fact that it is designed to be held as such shall be set forth in the deed of conveyance by which the property is acquired; or, after the title has been acquired, such design may be declared by a writing duly signed, sealed and acknowledged and recorded in the registry of deeds for the county or district in which the property is situated. . . .

8

Mass. 2006) (citing White v. Rice, 87 Mass. (5 Allen) 73 (1862); Richards v. Chace, 68 Mass (2 Gray) 383 (1854)); see also In re Fiffy, 281 B.R. 451, 454 (Bankr. D. Mass. 2002); Dwyer v. Campellin, 673 N.E.2d 863, 866 (Mass. 1996). "Because homestead laws are 'designed to benefit the homestead declarant and his or her family by protecting the family residence from the claims of creditors,' Massachusetts courts have 'construed the State homestead exemptions liberally in favor of debtors.'" Garran v. SMS Fin. V, LLC (In re Garran), 338 F.3d 1, 7 (1st Cir. 2003) (quoting Shamban v. Masidlover, 705 N.E.2d 1136, 1138 (Mass. 1999)); see also Dwyer v. Cempellin, 673 N.E.2d at 866.

Pursuant to § 1 of the Homestead Statute, "'family' shall include either a parent and child or children, a husband and wife and their children, if any, or a sole owner." M.G.L. ch. 188, § 1. Thus, to the extent the Debtor has a valid exemption under the Homestead Statute, that exemption is intended to benefit not only the Debtor, but also the Debtor's Daughter.

Once acquired, the Massachusetts Homestead Statute provides for termination of a Homestead Exemption in any of three ways: (1) by recording a new Homestead Declaration, see M.G.L. ch. 188, § 2;[7] In re Leigh, 307 B.R. 324, 330 (Bankr. D. Mass. 2004); (2) by execution of a deed conveying the property, which deed does not specifically reserve the homestead, M.G.L. ch. 188, § 7; or (3) by a signed release of homestead recorded in the appropriate registry of deeds, M.G.L. ch. 188, § 7.[8] See generally Garran,

---

[7] The last sentence of § 2 provides that the "acquisition of a new estate or claim of homestead shall defeat and discharge any such previous estate." M.G.L. ch. 188, § 2.

[8] Section 7 provides, in full:

An estate of homestead created under section two may be terminated during the lifetime of the owner by either of the following methods: – (1) a deed conveying the

9

338 F.3d at 7-8; In re Edwards, 281 B.R. 439, 449 (Bankr. D. Mass. 2002). It is undisputed that none of these events occurred in the present case; the Debtor has not filed a subsequent Homestead Declaration, he has not conveyed the property, see, infra, Note 2, and he has not signed a release of homestead.

The question, then, the Lienholders argue, is whether the Debtor's Homestead Exemption has lapsed as a result of his "abandonment" of the Property. The issue of whether a Homestead Exemption, having been validly-acquired under the current Homestead Statute, is susceptible to later termination by abandonment has not been reached by the Massachusetts Supreme Judicial Court (the "SJC"). And predicting how the SJC would rule on the issue[9] is complicated by an undercurrent of disagreement filtering through the cases in this district.

In In re Marrama, that court answered the question definitively after reviewing SJC rulings decided primarily under earlier statutes which provided homestead protections to a declarant's wife and children.[10]  307 B.R. 332 (Bankr. D. Mass. 2004). Noting that

---

property in which an estate of homestead exists, signed by the owner and the owner's spouse, if any, which does not specifically reserve said estate of homestead; or by (2) a release of the estate of homestead, duly signed, sealed and acknowledged by the owner and the owner's spouse, if any, and recorded in the registry of deeds for the county or district in which the property is located.

M.G.L. ch. 188, § 7. If the Homestead declarant is married, the general view in this District is that both spouses must sign the deed conveying the property or the release of homestead, regardless of whether both hold title to the property. See M.G.L. ch. 188, § 7; In re Melber, 315 B.R. 181, 188 (Bankr. D. Mass. 2004); Richards v. Chace, 68 Mass. at 385-86.

[9] See Garron, 338 F.3d at 6 (citing Caron v. Farmington Nat'l Bank (In re Caron), 82 F.3d 7, 9 (1st Cir. 1996)) (where SJC has not addressed an issue implicating the interpretation of the Massachusetts Homestead Statute, a federal court must predict how the SJC would rule).

[10] It is interesting to note that the homestead statutes at issue in these earlier cases were quite different from the current Homestead Statute. Earlier statutes provided protection for a [male] declarant/owner of property and extended the homestead protection "for the additional term of the

"several Massachusetts cases recognize[d] abandonment as a method of terminating a homestead," the Marrama court "conclude[d] that the Supreme Judicial Court would rule that a homestead estate could be terminated by abandonment." 307 B.R. at 337-38.

Other courts in this district, however, have expressed doubt as to whether a Homestead Exemption can be terminated by abandonment. As the court in In re Webber noted,

> The [current Homestead Statute] specifies three methods for terminating an estate of homestead, all three requiring a writing. . . . Therefore, by specifying three methods of termination, . . . the Massachusetts Legislature likely meant to preclude termination by simple abandonment.

278 B.R. 294, 297-98 (Bankr. D. Mass. 2002). See also In re Melito, 357 B.R. 684, 688 (Bankr. D. Mass. 2007); In re Taylor, 280 B.R. 294, 296-98 (Bankr. D. Mass. 2002) (citing, inter alia, Webber, 278 B.R. at 297-98; Woodbury v. Luddy, 96 Mass (14 Allen) 1, 5 (1867)); Dulanty v. Pynchon, 88 Mass. (6 Allen) 510, 512 (1863) ("an estate of homestead when once lawfully acquired cannot be released or lost except by deed duly acknowledged and recorded . . . .").

Today, this Court need not weigh in with its opinion on these differing views. Absent an act of termination explicit under the statute, the continued residence of the Debtor's

---

continuous subsequent occupation of his widow or any of his minor children." Silloway v. Brown, 94 Mass. (12 Allen) 30, 32 (1866); see also Foster v. Leland, 6 N.E. 859 (Mass. 1866) ("The homestead exemption, created by the acts of 1851, is continued after the householder's death, for the benefit of his widow and family only in the case of 'some one of them continuing to occupy such homestead.' St. 1851, c. 340, § 2."). Thus, those statutes explicitly contemplated continued occupation as a condition required for maintaining the homestead protection; consequently, many of the cases involved deciding whether or not the property had been "abandoned." See, e.g., Pratt v. Pratt, 37 N.E. 435 (Mass. 1894) (homestead protection not lost where widow left involuntarily and intended to return); Paul v. Paul, 136 Mass. 286 (1884) (widow built another house and moved there; homestead estate in former residence deemed abandoned); Foster v. Leland, 6 N.E. 859 (widow had no claim to homestead in former residence after husband's death where she and husband had previously left the property with no intent to return).

11

Daughter in the Property satisfies any occupancy requirement and precludes any argument that the Homestead Exemption has terminated by abandonment, even if such method were otherwise efficacious under Massachusetts law. The protection afforded the Debtor under the Homestead Statute extends to his family. And, because it is the *family*, and not the declarant alone, that Homestead Statute is meant to protect, the Court agrees with the conclusion reached by the Webber court that:

> even if the continued validity of an estate of homestead were contingent on the continuing satisfaction of the occupancy requirement, the requirement would be more faithfully construed as applying to the family, not just to the owner that holds the homestead.

278 B.R. at 298.

The age of the Debtor's Daughter is of no import. The Daughter falls within the definition of "family" pursuant to § 1 of the Homestead Statute. Unlike the more limited protection provided under § 4,[11] the homestead protection afforded to a declarant's children under § 1 is not lost upon reaching the age of majority; "[§ 1] contains no limitation whatsoever on 'children.'" In re Vasques, 337 B.R. at 258. Reading such a limitation into § 1 "is barred by the plain and explicit text" of the Homestead Statute. Id. at 258-59; see In re Garran, 338 F.3d at 6 (interpretation of Homestead Statute should not contradict "plain and unambiguous" statutory language). Thus, "even if the Debtor himself failed to satisfy the alleged occupancy requirement, his [Daughter] did not; and if there is any such requirement, [her] occupancy is enough to satisfy it." In re Webber, 278 B.R. at 299.

---

[11] Section 4 of the Homestead Statute was intended to continue an estate of homestead upon the death of the declarant. That section limits the continuation of the homestead "until the youngest unmarried child is eighteen and until the marriage or death of the [surviving] spouse." M.G.L. ch. 188, § 4.

IV.  CONCLUSION

For all the foregoing reasons, the Court finds that the Debtor's claimed exemption in the Property is valid.  Having found that the remaining elements necessary under § 522(f) have been met, the Court will GRANT the Motions to Avoid Liens, thereby overruling the Objections interposed by the Lienholders.  An order in conformity with this Memorandum shall issue forthwith.

DATED:    April 14, 2008              By the Court,

*[signature: Henry Jack Boroff]*

Henry J. Boroff
United States Bankruptcy Judge